OPINION OF THE COURT
Joseph A. DeMaro, J.
Motion by plaintiff for summary judgment pursuant to CPLR 3212 and RPAPL 1321 in this foreclosure action dismissing the defendants’ answer and counterclaim and directing the entry of judgment in favor of the plaintiff for the relief demanded in the complaint against defendants is granted and it is further ordered that the report of the Referee, appointed herein by the prior order of this court, is hereby ratified and confirmed in all respects; and plaintiff is directed to submit judgment of foreclosure upon notice to defendant.
The plaintiff has made out a prima facie case by the affidavit of Jackie Houston, foreclosure specialist of Litton Loan Servicing, L.P., plaintiff’s servicing agent in charge of loan documents; a copy of the balloon note dated May 30, 1997 in the sum of $117,600 with interest at 13.25% per annum executed by defendant, Tamara McFarland; a copy of the mortgage, dated May 30, 1997 of the loan by Walsh Securities, Inc. of $117,600 plus interest on 98 West Milton Avenue, Freeport, New York, executed and acknowledged by the borrower, defendant, Tamara McFarland; a copy of the assignment of mortgage by Walsh Securities, Inc. dated January 12, 1998 executed and acknowledged by the assistant vice-president of Walsh Services, Inc. to Bankers Trust, as trustee (the plaintiff herein); copies of the defendant’s credit application associated with this loan and letters procured with the broker’s assistance from defendants’ creditors; a copy of the summons and verified *330 complaint dated September 28, 1998 and a copy of defendant Tamara McFarland’s answer with counterclaim dated December 15, 2000 and plaintiff’s reply to counterclaim; a copy of Real Estate Settlement Procedures Act (RESPA) form HUD-1 settlement statement signed by defendant Tamara McFarland (borrower) and Margaret Dunkle (seller), and by Michael Ficchi (settlement agent) on May 30, 1997; a copy of the final truth in lending disclosure for real estate mortgage loans dated May 30, 1997 signed by defendant, Tamara McFarland, acknowledging receipt of a complete copy of said disclosure statement; and plaintiff’s attorney’s affirmation of regularity.
Defendant’s answer admits the signing of the note and mortgage and also admits that defendant has made no payment since December 1, 1997 to plaintiff; and, therefore, plaintiff is entitled to foreclosure unless defendant establishes a bona fide defense. (See UCC 3-307 [1], [2]; Marine Midland Bank v Brown, 115 AD2d 523, 524, lv denied 67 NY2d 607; Metropolitan Distrib. Servs. v DiLascio, 176 AD2d 312; Marton Assoc. v Vitale, 172 AD2d 501.)
The defendant’s answer also consists of general denials, an affirmative defense and counterclaim for a declaratory judgment that the subject note and mortgage should be rescinded by reason of defendant’s inducement to execute the subject note and mortgage in violation of the RESPA (12 USC § 2601 et seq.) and charges in accordance with 12 USC § 2607 and 15 USC § 1631 et seq.; and treble damages pursuant to 12 USC § 2607, plus recovery of attorney’s fees and expenses pursuant to 12 USC § 2607.
General denials in an answer are insufficient to raise triable issues of fact. (Iandoli v Lange, 35 AD2d 793.) Defendant has combined her affirmative defense with a counterclaim and has the burden of proof with respect thereto.
The defendant mortgagor contends that a “yield spread premium” which the mortgage broker received from the lender upon originating the mortgage constitutes an illegal violation under RESPA, prohibiting kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services under 12 USC § 2601 (b) (2) and § 2607 (a) and (b) and that such violation bars this foreclosure action. However, the plaintiff has established by documentary evidence that the broker here provided a sufficient number of services which HUD has specifically deemed to justify compensation to the broker, regardless of the form of payment taken, whether it be points, yield spread premiums or the like; and that such amount paid *331 was reasonably related to the value of the services actually performed under the circumstances present, and not excessive; and, therefore, this transaction falls within the RESPA exclusion of “payment to any person of a bona fide salary or compensation or other payment for goods or facilities actually furnished or for services actually performed” pursuant to 12 USC § 2607 (c) (2); and thus cannot be categorized as a prohibited kickback or an illegal referral. (See In re Old Kent Mtge. Co. Yield Spread Premium Litig., 191 FRD 155, 159 [D Minn]; Schmitz v Aegis Mtge. Corp., 1998 WL 1100084, 1998 US Dist LEXIS 22736 [D Minn, Doty, J.].) The defendant has failed to meet its burden of proof to show otherwise with respect to the instant transaction or to even raise a genuine issue of fact. The cases cited by defendant are inapplicable here. Defendant’s contention that the plaintiff presented no evidence of the service rendered by United Mortgage nor the total compensation paid United Mortgage is incorrect. (See letters of mortgage broker clearing defendant’s zero finance situation annexed to plaintiff’s moving papers; and also the settlement statement signed by defendant.) One does not need an expert to conclude that defendant’s lack of credited worthiness justified a rate higher than the prevailing market rate for a conventional type mortgage at the time the mortgage was made. Defendant has presented no evidence of an illegal steering of defendant to a particular mortgage lender.
Defendant contends that the lender, Walsh Securities, Inc., did not comply with 24 CFR 3500.7 (a) and (b) requiring that within three days of making a loan application, a good faith estimate, inter alia, of closing costs and payments to mortgage brokers be provided to the broker. However, 24 CFR 3500.7 (a) makes an exception therefrom under subdivision (b). Subdivision (b) of section 3500.7 provides:
“In the event an application is received by a mortgage broker who is not an exclusive agent of the lender, the mortgage broker must provide a good faith estimate within three days of receiving a loan application. * * * As long as the mortgage broker has provided the good faith estimate, the funding lender is not required to provide an additional good faith estimate, but the funding lender is responsible for ascertaining that the good faith estimate has been delivered.”
Here, the mortgage broker was not the exclusive agent of the lender, and the record shows that the mortgage broker provided *332 the necessary timely good faith estimate on March 7, 1997. (See exhibit 5, annexed to defendant’s attorney’s affirmation in opposition.) Further, the evidence submitted as part of plaintiffs moving papers, i.e., the settlement statement issued at closing showing the final exact figures at the May 20, 1997 closing with such requirement and also the requirement that lender payments to the mortgage broker (i.e., yield spread premium) must be shown as a “paid outside of closing” pursuant to RESPA Statement of Policy 1991-1 at II E (24 CFR part 3500; appendix). Defendant does not deny that the good faith estimate of closing costs was given to her, but states that such was disclosed in a confusing and disingenuous way. However, the lender cannot be held responsible for her attorney’s failure to make certain she understood same.
Defendant contends that when she appeared at the closing, she found that the interest rate of the loan (13.25%) was higher than as previously given to her. Such is incorrect. (See United Mortgage Corp. Estimated Note Rate — 13.25%—in United Mortgage Corporation’s estimated charges dated March 7, 1997 annexed as exhibit 5 to defendant’s attorney’s affirmation in opposition.) Defendant further claims that the interest rate of the loan was nearly double the prevailing rate of 7% in 1997 for conventional mortgages. As there are usury laws which prohibit the charging of interest over a particular rate (which in New York is 16%), the fact that an interest rate is higher than “the prevailing rate” is not grounds for rescission or any recognized defense to foreclosure. Although defendant has the burden of proof on the affirmative defense and counterclaim, she has offered no evidence to substantiate her conclusory contention.
Defendant further contends that she was never advised of the ‘Yield Spread Premium” at two points but on several instances acknowledges that she was told that she would be paying three points. Nowhere in the documentation, which the defendant has submitted, is there any substantiation that defendant paid the two points to the mortgage broker, because she did not pay such. Such was a transaction between the lender and broker, and it was properly disclosed as is demonstrated by the disclosure documents submitted herein. Defendant specifically mentions the closing statement provided to her by her own counsel and argues that the closing statement’s failure to disclose the yield spread premium (YSP) is somehow a violation by the lender. The fact is that the closing statement setting forth disbursement of various funds and payment of *333 the various expenses of the closing, as provided to her by her own counsel, does not reflect any payment of the 2% YSP because it was not a payment made by defendant. In any event, a document proposed by her attorney is irrelevant to any disclosure by the lender.
‘Yield Spread Premiums” are accepted vehicles for lenders to compensate mortgage brokers for services rendered in the closing transaction. The record shows that the YSP was disclosed on various documents. The fact that it was not specifically labeled a ‘Yield Spread Premium” does not make same illegal or give defendant grounds to rescind the mortgage. Had the documents, instead of referring to the payment in the terms set forth, specifically stated “Yield Spread Premium,” would defendant now be claiming that she understood same any better. Defendant was provided with all of the requisite disclosures and proceeded through the closing transaction. Her contention that she did not understand the documentation, now over three years later, is unavailing. A person is presumed to understand and comprehend documents she signs. Failure to read the documents before signing or signing despite not understanding them does not make the- document any less binding. (See Gillman v Chase Manhattan Bank, 135 AD2d 488, 491, affd 73 NY2d 1.)
While defendant’s claim of the right of rescission is based upon 15 USC § 1635, defendant has completely overlooked the fact that said statute clearly sets forth that “[a]n obligor’s right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosure required under this part have not been delivered to the obligor * * * .” (15 USC § 1635 [f].) While, notwithstanding the expiration of certain time limits in which to commence an action under Truth in Lending Act (TILA), a borrower may still retain the right to assert TILA violations as a defense to foreclosure, the right to rescind expires for all purposes under the aforesaid statute. Here, the loan transaction which is the subject of this foreclosure action was consummated on May 30, 1997. (See note and mortgage.) Accordingly, pursuant to CPLR and to the afore-cited statute, the mortgagor’s right to rescind, under all scenarios applicable in the instant action, expired on May 30, 2000. Since the defendant mortgagor’s answer which asserted the counterclaim rescission was not served until December of 2000, assertion of any claim for rescission was *334 untimely, whether it be as a defense to foreclosure or otherwise; and the right to do so has expired. (See Beach v Ocwen Fed. Bank, 523 US 410.) Defendant did not seek rescission within the requisite three-year period; and, therefore, she is barred from now seeking rescission.
Defendant argues that the right to rescind, notwithstanding a federal statute, which clearly dictates that it has expired, somehow still exists based upon the workings of CPLR 203 (c). Such is not the case. The right of rescission is created and governed by federal statute. (The Truth in Lending Act.) Thus, an attendant federal statute, which then limits the right to three years after consummation of the transaction, cannot be altered or superseded by a state statute. CPLR 203 (d) refers to a defense or counterclaim in general, but 15 USC § 1635 (f) on the other hand expressly denies a borrower the right to rescind after three years. The United States Supreme Court has ruled on this issue and held that “1635(f) completely extinguishes the right of rescission at the end of the 3-year period.” (Beach v Ocwen Fed. Bank, supra at 412.) Section 1635 (f) does not address the time limit to commence an action; it addresses the duration of a particular right and the duration is absolute. It is, therefore, clear that CPLR 203 (c) cannot operate to extend the right to rescind.
Defendant also contends that plaintiff is barred under the doctrine of “law of the case” from summary judgment herein because the court, upon defendant’s prior motion to vacate her default in answering the complaint, found a meritorious defense. Even if the court had found that a meritorious defense existed for purposes of allowing defendant to interpose an answer, the determination certainly does not preclude the granting of summary judgment in plaintiffs favor. It is well settled that courts favor resolution of matters upon their merits and not on default. Thus, the demonstration of a “meritorious defense” for purposes of vacating a default is not the same as a demonstration of a triable issue of fact sufficient to preclude summary judgment. (Marine Midland Bank v Fanning, 233 AD2d 600.) Here, plaintiff, in moving for summary judgment, laid bare its proof sufficient to establish the existence of the debt and defendant’s default in payment thereof. In fact, defendant did not deny the existence of the debt or her default in payment, but instead seeks rescission. Notwithstanding that the right to rescind has elapsed, defendant pleaded rescission as an affirmative defense and, therefore, the burden is upon the defendant to present credible evidence sufficient to create a *335 triable issue of fact. (Kowalski Enters. v Sem Intl., 250 AD2d 648.) Defendant must show facts sufficient to require a trial of any issue of fact. The evidence necessary to defeat summary judgment must be more than conclusory self-serving affidavits. It must have probative value sufficient to demonstrate an unresolved material issue of fact which can be determined only at a plenary trial. (Kosson v “Algaze,” 84 NY2d 1019, 1020.) Defendant did not do so. In any event, in the prior order dated August 11, 2000 the court did not determine, as defendant contends, that “the court has already determined that defendant possesses a meritorious defense of the lender’s violation and federal regulations” but rather the said order states that “She has therefore alleged facts which, if true, may constitute a meritorious defense.” Defendant has not submitted evidence showing that the payments by the lender to the broker were unreasonably high and not related to the services rendered by the broker. Nor has defendant shown by any evidence that adequate disclosure of payments and expenses were not properly given. Indeed, she has not shown that the alleged facts of violations were true.
It is, therefore, apparent that defendant is unable to establish a valid defense to the payment of the note and mortgage or to establish its affirmative defense and counterclaim for a declaratory judgment for rescission and damages or to provide evidentiary facts sufficient to raise genuine triable issues of fact herein. (See Chemical Bank v Econ, 87 AD2d 706, appeal dismissed 57 NY2d 604; Frank Corp. v Federal Ins. Co., 70 NY2d 966.) Accordingly, the court dismisses the defendant’s answer with affirmative defense and counterclaim; and summary judgment is granted in favor of the plaintiff against the defendant for the amount demanded in the complaint. The court hereby ratifies and confirms the report of Referee.