Filed 12/4/20  Matthews v. Dept. of Veterans Affairs CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| CINDY MATTHEWS, | |
| Plaintiff and Appellant, | E071918 |
| v. | (Super.Ct.No. CIVDS1612456) |
| DEPARTMENT OF VETERANS AFFAIRS, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of San Bernardino County.  Brian S. McCarville, Judge.  Affirmed.

The Law Office of Evan D. Williams and Evan D. Williams for Plaintiff and Appellant.

Shirley C. Ogata, Matthew Dana and Daniel Muallem for Defendant and Respondent.

In this employment discrimination appeal, we affirm the trial court's grant of summary judgment in the employer's favor.  As we explain, the employee has not offered sufficient admissible evidence to show triable issues of material fact.

## I. FACTUAL AND PROCEDURAL HISTORY

For ease of exposition, the following factual history is taken primarily from plaintiff and appellant Cindy Matthews's complaint, summary judgment opposition, and brief on appeal, setting aside for the moment any issues regarding evidentiary support.

Matthews, an African American woman, began working for defendant and respondent Department of Veterans Affairs (CalVet) in 1999. She was laid off in 2003 but rehired as a supervising registered nurse in 2007 at a CalVet facility in Barstow. She alleges that her work performance has not been criticized.

In 2010, Matthews filed a complaint with CalVet's Equal Employment Opportunity division, alleging disparate treatment from her supervisor, Jeannie Halliday. Matthews alleged that Halliday assigned Matthews more work than her peers, ignored her requests for more staff (while similar requests were approved for her peers), spoke to Matthews in a derogatory manner, wrote Matthews up for trivial incidents, and excluded Matthews from quarterly meetings. CalVet concluded that this first administrative complaint failed to establish a prima facie case of discrimination.

In 2011, Matthews filed a second administrative complaint, this time with the Department of Fair Employment and Housing (DFEH), alleging racial discrimination and raising many of the same incidents. Although CalVet's Equal Employment Opportunity officer received the administrative complaint, the officer failed to investigate whether the claims were substantiated.

In January 2012, Matthews filed a third administrative complaint, this time with CalVet, alleging racial discrimination. The third administrative complaint alleged that Matthews's supervisory duties had been transferred to someone else, that Halliday was soliciting information from others about Matthews "to find justification for a write up," that Halliday told another employee to stop speaking to Matthews, and that Matthews (but not other nurses) had been prohibited from entering the medication room. This administrative complaint was also dismissed for failure to establish a prima facie case.

In May 2012, one of Matthews's coworkers informed Matthews that another employee had placed a doll of an African American woman with a noose around its neck "in an office in which [Matthews] and other staff could plainly view it." Although a complaint about the incident was filed, the employee was never disciplined.

In August 2012, Matthews filed a fourth administrative complaint, this time with the DFEH, alleging that Halliday was retaliating against Matthews for the earlier complaints. The fourth administrative complaint was dismissed for failure to establish a prima facie case.

In September 2013, one of Matthews's subordinates, Karanina Lundgren, placed a feces smeared hemoccult card in Matthews's mailbox. (According to factual findings made by the State Personnel Board following a complaint Matthews would file in March 2014, a "[h]emoccult kit is a secured package containing a stool sample to be tested in a laboratory.") Matthews wrote Lundgren up for the incident, after which Lundgren filed a complaint against Matthews for racial discrimination. The thrust of Lundgren's

complaint was that Matthews treated Lundgren, who is Caucasian, less favorably than she treated an African American colleague.

In November 2013, Matthews filed a fifth administrative complaint, again with the DFEH, alleging race discrimination and retaliation. The fifth administrative complaint generally alleged that the investigation into Matthews following the hemoccult incident was unfair. This complaint was also dismissed.

In March 2014, as mentioned above, Matthews filed a sixth administrative complaint, this time with the State Personnel Board, alleging retaliation as a result of her earlier administrative complaints. In July 2014, following an investigation described in its notice of findings, the State Personnel Board dismissed the administrative complaint for failure to demonstrate a prima facie case.

In August 2014, as a result of the investigation against Matthews, Matthews was demoted from supervising registered nurse to Registered Nurse.

In July 2015, Matthews filed a seventh administrative complaint, again with the DFEH, alleging discrimination, harassment, and retaliation. Matthews requested an immediate right to sue notice and was given one the same day she filed the administrative complaint.

In July 2016, Matthews filed the instant complaint in trial court, alleging five causes of action for (1) employment discrimination based on race; (2) hostile work environment; (3) failure to prevent race discrimination and hostile work environment; (4) retaliation for complaints of race discrimination; and (5) intentional infliction of

4

emotional distress. The trial court sustained a demurrer, not being challenged on appeal, against the fifth cause of action for intentional infliction of emotional distress. All defendants other than CalVet were either dismissed following a demurrer or a request for dismissal.

CalVet moved for summary judgment, arguing in part that Matthews's suit was barred by the statute of limitations, that Matthews failed to exhaust administrative remedies, that there are no triable issues of material fact on each of the four remaining causes of action, and that CalVet had a legitimate, nondiscriminatory reason to demote Matthews. The trial court granted the motion.

## II. DISCUSSION

We independently review an order granting summary judgment (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 (*Guz*)), and we "must affirm on any ground supported by the record" (*Jimenez v. County of Los Angeles* (2005) 130 Cal.App.4th 133, 140).

"In ruling on the motion, the court must 'consider all of the evidence' and 'all' of the 'inferences' reasonably drawn therefrom [citation], and must view such evidence [citations] and such inferences [citations], in the light most favorable to the opposing party." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) But "[o]nly *admissible evidence* is liberally construed in deciding whether there is a triable issue." (*Bozzi v. Nordstrom, Inc.* (2010) 186 Cal.App.4th 755, 761.) Declarations, for example, "must show the declarant's personal knowledge and competency to testify, state facts and

not just conclusions, and not include inadmissible hearsay or opinion." (*Ibid.*) "A party may not raise a *triable* issue of fact at summary judgment by relying on evidence that will not be admissible at trial." (*Perry v. Bakewell Hawthorne, LLC* (2017) 2 Cal.5th 536, 543.)

As a threshold matter, the parties dispute whether Matthews may rely on events occurring more than one year prior to her last (i.e., seventh) administrative complaint in determining CalVet's potential liability. The issue arises because generally "[a] prerequisite to bringing a civil action under [the Fair Employment and Housing Act (FEHA; Gov. Code[1], § 12900 et seq.)] is the filing of an administrative complaint with DFEH no later than one year after the violation occurred." (*Dominguez v. Washington Mutual Bank* (2008) 168 Cal.App.4th 714, 720, citing § 12960.) However, under what is known as the "continuing violation doctrine," "a FEHA complaint is timely if discriminatory practices occurring outside the limitations period continued into that period." (*Id.* at p. 721.)

Here, we assume without deciding that the continuing violation doctrine applies. We nevertheless find that summary judgment was properly granted for the reasons discussed below.

A. *The* McDonnell Douglas *Framework*

In addressing whether summary judgment was properly granted on each of Matthews's causes of action, we begin by describing the analytical framework applicable

---

[1] Undesignated statutory references are to the Government Code.

in employment discrimination cases derived from *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792. The framework is described well in the following extended quote from *Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 860-862:

"In cases alleging employment discrimination, we analyze the trial court's decision on a motion for summary judgment using a three-step process that is based on the burden-shifting test that was established by the United States Supreme Court for trials of employment discrimination claims in *McDonnell Douglas Corp. v. Green*[, *supra*, 411 U.S. 792.] [Citations.] This test 'reflects the principle that direct evidence of intentional discrimination is rare, and that such claims must usually be proved circumstantially. Thus, by successive steps of increasingly narrow focus, the test allows discrimination to be inferred from facts that create a reasonable likelihood of bias and are not satisfactorily explained.' [Citation.]

"At trial, under the first step of the *McDonnell Douglas* framework, the plaintiff may raise a presumption of discrimination by presenting a 'prima facie case,' the components of which vary depending upon the nature of the claim, but typically require evidence that '"(1) [the plaintiff] was a member of a protected class, (2) [the plaintiff] was qualified for the position he [or she] sought or was performing competently in the position . . . held, (3) [the plaintiff] suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance [that] suggests discriminatory motive."' [Citation.] 'A satisfactory showing to this effect gives rise to a presumption of discrimination which, if unanswered by the employer, is

7

mandatory—it requires judgment for the plaintiff.' [Citation.] However, under the second step of the test, 'the employer may dispel the presumption merely by articulating a legitimate, nondiscriminatory reason for the challenged action. [Citation.] At that point the presumption disappears.' [Citation.] Under the third step of the test, the 'plaintiff must . . . have the opportunity to attack the employer's proffered reasons as pretexts for discrimination, or to offer any other evidence of discriminatory motive.' [Citation.]

"The *McDonnell–Douglas* framework is modified in the summary judgment context. In a summary judgment motion in 'an employment discrimination case, the employer, as the moving party, has the initial burden to present admissible evidence showing either that one or more elements of plaintiff's prima facie case is lacking or that the adverse employment action was based upon legitimate, nondiscriminatory factors.' . . .

"'[I]f nondiscriminatory, [the employer's] true reasons need not necessarily have been wise or correct. [Citations.] While the objective soundness of an employer's proffered reasons supports their credibility . . . , the ultimate issue is simply whether the employer acted with a motive to *discriminate illegally*. Thus, "legitimate" reasons [citation] in this context are reasons that are *facially unrelated to prohibited bias*, and which, if true, would thus preclude a finding of *discrimination*.' [Citation.] Examples of legitimate reasons are a failure to meet performance standards [citation] or a loss of confidence in an employee [citation].

"If the employer meets its initial burden, the burden shifts to the employee to 'demonstrate a triable issue by producing substantial evidence that the employer's stated reasons were untrue or pretextual, or that the employer acted with a discriminatory animus, such that a reasonable trier of fact could conclude that the employer engaged in intentional discrimination or other unlawful action.' [Citation.]

"In *Guz*, [*supra*, 24 Cal.4th 317] the Supreme Court emphasized that 'the great weight of federal and California authority holds that an employer is entitled to summary judgment if, considering the employer's innocent explanation for its actions, the evidence as a whole is insufficient to permit a rational inference that the employer's actual motive was discriminatory.' [Citation.] It is not sufficient for an employee to make a bare prima facie showing or to simply deny the credibility of the employer's witnesses or to speculate as to discriminatory motive. [Citations.] Rather it is incumbent upon the employee to produce 'substantial responsive evidence' demonstrating the existence of a material triable controversy as to pretext or discriminatory animus on the part of the employer. [Citation.]"

B. *First Cause of Action: Race Discrimination*

In its motion for summary judgment, CalVet contended that Matthews was demoted for nondiscriminatory reasons. Citing deposition testimony and other evidence, CalVet described four specific incidents and reasons in claiming that Matthews was not competently performing her duties. They included an incident where she publicly reprimanded another employee, an incident where she improperly transferred a resident

9

to another unit, a claim that she treated others unfairly (including Lundgren, whose race discrimination complaint against Matthews was found to be substantiated by CalVet's Equal Employment Opportunity Officer), and a claim that she had poor supervisory skills.

In her opposition, Matthews stated that she would be "able [to] prove that discrimination was a substantial motivating factor" in her demotion, but she failed to cite any evidence in support of this statement. Additionally, Matthews contested the notion that she was not competently performing her duties, but her only evidence on this point was a statement from her declaration that she "excelled" at her job and did not "recall any significant 'write ups' or other admonishments," as well as a statement from three others, each of whom opined in a conclusory fashion that Matthews was good at her job.[2] In addition, by focusing only on the demotion under this cause of action, Matthews implicitly conceded that the only adverse employment action at issue was the August 2014 demotion.

Thus, in trial court, Matthews relied only on broad, conclusory statements in contending that she was performing competently in her position, and in contending that racial animus existed, Matthews relied on no evidence whatsoever. (See *Bozzi v. Nordstrom, Inc.*, *supra*, 186 Cal.App.4th at p. 761 [declarations must "state facts and not

---

[2] The statement, which was the same in all three declarations, said: "[Matthews] is caring, attentive, and responsive to her patients[.] I have never seen her undertake anything but actions that I believe were necessary and proper for rendering patient care[.] She is an excellent nurse and SRN[.]"

just conclusions" in order to constitute admissible evidence].)  This was insufficient to raise a triable factual issue.

Matthews's arguments on appeal fare no better.  Matthews first contends that the May 2012 discovery of a doll with a noose shows racial animus.  However, as CalVet correctly observes, the trial court sustained objections to the only evidence Matthews proffered for that incident in trial court, i.e., paragraphs 15 and 16 of Matthews's declaration.[3]  Moreover, Matthews does not contest the objections on appeal.  Matthews therefore fails to show a triable issue regarding racial animus by pointing to the doll incident.

Matthews additionally contends on appeal that discriminatory intent can be inferred from the number of complaints Matthews filed and the timing of her demotion. This contention fails, however, as the case Matthews relies upon, *Sandell v. Taylor-Listug, Inc.* (2010) 188 Cal.App.4th 297, 310, refers to the plaintiff's initial burden at trial to show a prima facie case under the *McDonnell Douglas* framework, which is not the applicable standard she must meet when opposing a summary judgment motion.  (See *Sandell v. Taylor-Listug, Inc.*, *supra*, at p. 310 [noting that the "prima facie burden is

---

[3]  The paragraphs state:  "15[.]  In or around May 2012, I was informed by a coworker that someone had placed a doll which resembled me ([i.e.,] an African American Woman with particular features) near a computer screen in a nurses' station in an open area in which I and other staff could plainly view it[.]  The doll which resembled me ([i.e.,] an African American Woman with particular features) had a noose around its neck and was imitating a lynching[.]  [¶]  16[.]  A former subordinate of mine . . . was responsible for the doll."  The trial court sustained a hearsay objection to paragraph 15 and a foundation objection to paragraph 16.

light"]; *Serri v. Santa Clara University*, *supra*, 226 Cal.App.4th at p. 862 [in rebutting employer's explanation, "[i]t is not sufficient for an employee to make a bare prima facie showing . . . or to speculate as to discriminatory motive"].)

Accordingly, on this record, CalVet satisfied its initial burden when it presented admissible evidence to show that Matthews was demoted for legitimate, nondiscriminatory reasons, and Matthews failed to produce admissible evidence sufficient to demonstrate a triable issue.  Summary judgment was proper on this cause of action.

*C.  Second Cause of Action:  Racial Harassment*

"'One form of employment discrimination is harassment on the basis of race or national origin.'  [Citations.]  To establish a prima facie case of a racially hostile work environment, [a plaintiff must] show that (1) [she] was a member of a protected class; (2) [she] was subjected to unwelcome racial harassment; (3) the harassment was based on race; (4) the harassment unreasonably interfered with [her] work performance by creating an intimidating, hostile, or offensive work environment; and (5) the [employer] is liable for the harassment." (*Thompson v. City of Monrovia* (2010) 186 Cal.App.4th 860, 876.)

In its summary judgment motion, CalVet contended that Matthews could not satisfy the second, third, and fourth of these requirements, relying again on its evidence and asserting specifically that the alleged events were sporadic and not motivated by race. (See *Thompson v. City of Monrovia*, *supra*, 186 Cal.App.4th at p.  877 [harassment "'"cannot be occasional, isolated, sporadic, or trivial"'"].)  In opposition, however,

12

Matthews cited only to three paragraphs of her declaration, one of which was paragraph 15, which we have noted the trial court struck on hearsay grounds. The remaining two paragraphs—and thus the entirety of her proffered evidence regarding racial harassment—stated that Lundgren once "improperly and against nursing practice and policy placed a feces-smeared hemoccult card in [Matthews's] work mailbox—these cards are never permitted outside the laboratory testing areas," and that "[b]eing subject to a hostile work environment cause[d]" Matthews to suffer various symptoms. These two statements are insufficient to raise a triable issue as to the frequency of events giving rise to her alleged harassment, or whether any such harassment was based on race. Additionally, the arguments Matthews makes on appeal under this cause of action mirror those made for the first cause of action, which we have rejected above. Accordingly, we conclude on this record that CalVet satisfied its initial burden, and Matthews did not produce substantial evidence sufficient to demonstrate a triable issue.

D. Third Cause of Action: Failure to Prevent

An employer cannot be liable for failure to prevent discrimination or harassment if there is no such discrimination or harassment in the first place. (See *Trujillo v. North County Transit Dist.* (1998) 63 Cal.App.4th 280, 289 ["Employers should not be held liable to employees for failure to take necessary steps to prevent such conduct, except where the actions took place and were not prevented"]; *Dickson v. Burke Williams, Inc.* (2015) 234 Cal.App.4th 1307, 1315-1316.) Accordingly, because summary judgment was proper as to Matthews's causes of action for race discrimination and harassment,

13

summary judgment was proper as to failure to prevent race discrimination and harassment as well.

*E. Fourth Cause of Action:  Retaliation*

"[I]n order to establish a prima facie case of retaliation under the FEHA, a plaintiff must show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action."  (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042.)

Because the adverse employment action alleged here (i.e., Matthews's 2014 demotion) is the same as the one addressed under the first cause of action, our analysis here is similar.  In its summary judgment motion, CalVet contended that it demoted Matthews for legitimate reasons—the same reasons discussed above—and not because Matthews had filed administrative complaints.  Both in her summary judgment opposition and on appeal, Matthews does not point to any substantial evidence showing a triable factual issue.  Although on appeal Matthews contests whether this cause of action was barred for failure to exhaust administrative remedies (as the trial court concluded), that point is not germane here, as we "must affirm on any ground supported by the record."  (*Jimenez v. County of Los Angeles*, *supra*, 130 Cal.App.4th at p. 140.)[4] Summary judgment on this cause of action was therefore proper.

---

[4] "We note that Code of Civil Procedure section 437c, subdivision (m)(2) prohibits an appellate court from affirming a grant of summary judgment on a ground not

14

## III. DISPOSITION

The judgment is affirmed. CalVet is awarded its costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL
J.

We concur:

MCKINSTER
Acting P. J.

FIELDS
J.

---

relied on by the trial court unless the appellate court permits supplemental briefing." (*Byars v. SCME Mortgage Bankers, Inc.* (2003) 109 Cal.App.4th 1134, 1147, fn. 7.) Here, the trial court did not grant summary judgment on the retaliation cause of action due to a failure to raise a triable issue of fact. However, "[w]e do not believe that supplemental briefing is required in this case since the issue was raised below and has already been briefed on appeal." (*Ibid.*) CalVet's summary judgment moving papers and reply raised the issue, as does its brief on appeal.

15