**Gregory GERACI, and Beverly Geraci, husband and wife, on behalf of themselves and of all others similarly situated, Plaintiffs,**

v.

**HOMESTREET BANK, Defendant.**

No. C01–1465Z.

United States District Court, W.D. Washington, at Seattle.

April 12, 2002.

John H. Bright, Alexander Perkins, Keller Rohrback, Seattle, WA, Barry G. Reed, Zimmerman Reed, Minneapolis, MN, Hart Robinovitch, Zimmerman Reed, Scottsdale, AZ, for plaintiffs.

Stephen C. Kelly, Kelly & Associates, P.S., Seattle, WA, for defendant.

ORDER

ZILLY, District Judge.

This case is before the Court on defendant Homestreet Bank's ("Homestreet") motion for judgment on the pleadings, docket no. 17. The plaintiffs, a class of individuals who entered into loan transactions with the defendant, have brought this class action alleging three claims against the defendant: breach of contract by charging fees in violation of Department of Veterans Affairs loan regulations, 38 C.F.R. § 36.4312; violation of Section 8 of the Real Estate Settlement Procedures Act, ("RESPA") 12 U.S.C. § 2607 prohibition against the payment of kickbacks and referral fees; and unjust enrichment under state law. The plaintiff subsequently filed a motion for leave to file a surreply brief some 16 days after the defendant's reply brief was filed. *See* Motion to File Surreply, docket no. 29. Finally, the plaintiffs have requested that the court

stay these proceedings pending the outcome of two cases currently on appeal with the Ninth Circuit Court of Appeals. *See* Plaintiffs' Motion for Stay, docket no. 39. For the reasons set forth below, the Court GRANTS the defendant's motion for judgment on the pleadings, DENIES the plaintiffs' motion for leave to file a surreply brief, and DENIES the plaintiffs' motion to stay the proceedings.

## BACKGROUND

This case represents another chapter in the saga of yield spread premium litigation. The plaintiffs, Mr. and Mrs. Geraci, allege that the defendant Homestreet Bank unlawfully paid yield spread premiums to a mortgage broker, Windermere Mortgage Services ("Windermere"), in connection with a lending transaction they were a party to. The Geracis engaged the services of Windermere to secure a loan guaranteed by the Department of Veterans Affairs ("VA") and Windermere secured them a loan in the amount of $161,670.00. First Amended Class Action Complaint ("FAC"), docket no. 4, at ¶ 27. The Geracis were charged a loan origination fee in the amount of $1,616.70, equal to one percent of the principal amount of the loan. *Id.* at ¶ 28. Additionally, Homestreet paid Windermere a "service fee" in the amount of $1,843.04, equal to approximately 1.14 percent of the principal amount of the loan. *Id.* at ¶ 31. Thus, Windermere ultimately received fees totaling $3,459.74 or 2.14 percent of the principal amount of the loan. *Id.* at ¶ 32. The plaintiffs claim that the one percent loan origination fee was intended as full compensation to Windermere for its services. *Id.* at ¶ 31.

The complaint alleges three related causes of action. The plaintiffs first allege that the payment of the yield spread premium violates the one percent cap on loan charges contained in the VA regulations that the loan is subject to, 38 C.F.R.

§ 36.4312. *See* FAC at 12–13. Because the promissory note and deed of trust associated with their loan provide that any fees charged in excess of that permitted by law are to be refunded, the plaintiffs claim that the defendant's payment of the yield spread premium is a breach of the promissory note and deed of trust. Second, the plaintiffs contend that the yield spread premium was not exchanged for goods or services actually provided by the broker, in violation of the anti-kickback and referral fee provisions of Section 8 of RESPA. *See id.* at 13–18. Finally, the plaintiffs assert that the defendant was unjustly enriched by receipt of the higher interest rates that would not have been charged but for the unlawful payment of the yield spread premium. *See id.* at 18–19.

The defendant argues that each of these claims should be dismissed as a matter of law under Fed.R.Civ.P. 12(c). As to the plaintiffs' claim for breach of contract, the defendant argues that there was no violation of the one percent cap because Homestreet, rather than the Geracis, paid the yield spread premium to Windermere. Since Section 36.4312 regulates charges assessed against and paid by the borrower, the defendant contends that the yield spread premium should not be counted against the one percent cap on loan charges. In terms of the plaintiffs' RESPA claim, the defendant asserts that the plaintiffs have failed to allege facts that support a conclusion that the yield spread premium was an unlawful referral payment under Section 8. Finally, the defendant claims that the plaintiffs' unjust enrichment count fails because it is totally derivative of the plaintiffs' breach of contract and RESPA claims.

## DISCUSSION

### I. Legal Standard

The standard for deciding a motion under Rule 12(c) is virtually identical to the

standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Ludahl v. Seaview Boat Yard, Inc.*, 869 F.Supp. 825, 826 (W.D.Wash.1994). Judgment on the pleadings may be granted only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co.*, Ltd., 132 F.3d 526, 529 (9th Cir.1997) (internal quotations and citations omitted). In other words, a motion for judgment on the pleadings should be granted only when it appears that the moving party is entitled to judgment as a matter of law. *Fajardo v. County of Los Angeles*, 179 F.3d 698, 699 (9th Cir.1999). Thus, the narrow question presented by the defendant's motion is whether the plaintiffs have failed to plead facts that, even if taken as true, fail to state valid claims for which relief may be granted.

## II. First Cause of Action: Breach of Contract

The plaintiffs' first claim for breach of contract depends upon the allegation that Homestreet breached its contractual obligations by charging origination fees in excess of that allowed by VA regulations. Title 38 U.S.C. § 3703(c)(1) provides that VA-guaranteed loans are subject to any regulations issued by the Secretary of the VA. Section 36.4312, Title 38 of the Code of Federal Regulations provides that "[n]o charge shall be made against, or paid by [a] borrower incident to the making of a guaranteed or insured loan other than those expressly permitted under paragraph (d) or (e) of [Section 36.4312]." 38 C.F.R. § 36.4312(a). Paragraph (d) provides a schedule of fees and charges that a lender is permitted to charge a borrower for a VA guaranteed or insured loan. 38 C.F.R. § 36.4312(d). Subparagraph (d)(1) provides a list of nine enumerated fees, which include items other than origination

charges. 38 C.F.R. § 36.4312(d)(1). Additionally, subparagraph (d)(2) states that "[a] lender may charge and the veteran may pay a flat charge not exceeding 1 percent of the amount of the loan, provided that such flat charge shall be in lieu of all other charges relating to costs of origination not expressly specified and allowed in this schedule." 38 C.F.R. § 36.4312(d)(2).

■ The plaintiffs claim that the yield spread premium paid to Windermere exceeds this one percent cap on origination fees that may be charged, when aggregated with the origination fee that Windermere collected from the plaintiffs directly at closing. This claim fails for the simple reason that the yield spread premium at issue here was not charged against or paid by Mr. and Mrs. Geraci, but was instead paid by Homestreet Bank to Windermere. Thus, the yield spread premium does not fall within the plain language of the regulation, which limits only fees "charged against, or paid by the borrower." 38 C.F.R. § 36.4312(a). The VA's interpretation of its own regulation confirms this conclusion. The VA's *Lender's Handbook* states that in addition to the itemized charges listed in Section 36.4312(d)(1), a lender may charge the borrower a flat charge equal to one percent of the amount borrowed. *Lender's Handbook*, VA Pamphlet 26–7, § 8.02 at 8–6. Although this flat charge is intended to cover all of the lender's costs and services, "the lender may pay third parties for services." *Id.*, § 8.03 at 8–8. The VA takes the position that its regulations, while limiting charges assessable against the borrower, "do not limit the payment of fees and charges by other parties." *Id.*, § 8.04 at 8–10. Instead, the VA advises lenders to consult RESPA with regard to the legality of lender payments to third parties. *See id.*, § 8.03 at 8–8. Nothing contained within

the regulation or the VA's interpretation of the regulation can be construed as including yield spread premiums as part of the charges regulated by the one percent cap. This silence as to yield spread premiums, coupled with a plain reading of the regulation, indicates that Section 36.4312 was not intended to limit any payments made by lenders to mortgage brokers or other parties.

As an official agency interpretation of a rule that the VA administers, the Court holds that the interpretation of Section 36.4312 contained within the VA pamphlet is entitled to substantial deference. *See Auer v. Robbins*, 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997) (citations and internal quotes omitted) (an agency's interpretation of its own regulation is entitled to substantial deference unless it is "plainly erroneous or inconsistent with the regulation"); *Bjustrom v. Trust One Mortg.*, 178 F.Supp.2d 1183, 1193 (W.D.Wash.2001) (granting some deference to HUD's interpretation of the one percent origination fee cap on FHA loans). The VA's interpretation is reasonable and tracks with a plain reading of the regulation. Although the VA's interpretation of the regulation falls short of expressly excluding yield spread premiums by name, the VA pamphlet clearly states that lender payments to third parties, which yield spread premiums clearly are, were not intended to be subject to the one percent cap. *See Lender's Handbook*, § 8.03 at 8–8.

In spite of the apparent plain meaning of the regulation and the interpretation given to it by the VA, the plaintiffs insist that yield spread premiums must be considered part of the charges limited under the one percent cap. Although the plaintiffs appear to concede as a factual matter that yield spread premiums are paid by the lender and not the borrower, they argue that the yield spread premiums are nevertheless indirectly paid by the lender through higher interest rates. In support of this position, the plaintiffs rely on *Andrews v. Temple Inland Mortg.*, 2001 WL 1136160, No. 00–1999 (DWF/AJB), slip op. (D.Minn.2001), apparently the only case to address this precise issue. As in the instant case, in *Andrews*, the defendant contended that a yield spread premium was not subject to the one percent cap because it was paid by the lender rather than the borrower. *Id.* at *4. The court rejected this argument, finding that even though the premium was paid by the lender, the payment of the premium was wholly dependent on the existence of an above part interest rate, leading to the conclusion that the premium was in fact paid by the borrower. *Id.* The court also concluded that yield spread premiums were not excluded from the one percent cap solely because the VA regulation did not include any limitation on interest rates. *Id.* Despite some superficial appeal, however, the *Andrews* decision is ultimately unpersuasive. The court failed to confront the plain language of Section 36.4312 and the VA's interpretation of it. Although indirect payments could have been included as part of the one percent cap, there is no reference to such payments in the regulation and the VA's interpretation of the regulation supports a contrary conclusion.

A more persuasive analysis is provided by *Bjustrom v. Trust One Mortg.*, 178 F.Supp.2d 1183 (W.D.Wash.2001). In *Bjustrom*, the court interpreted a similar provision contained within the Department of Housing and Urban Development's ("HUD") regulation concerning limitations on origination fees for Federal Housing Authority's ("FHA") loans. *See* 178 F.Supp.2d at 1188. Not only is there substantial similarity between the VA regulation and the HUD/FHA regulation, but the basic issue in *Bjustrom* regarding the one percent cap is essentially the same as the issue in this case: are yield spread premi-

ums properly considered part of an agency-imposed one percent cap? Similar to the one percent VA cap, the FHA provision limits the amount a lender can charge a borrower by providing that the lender or broker may "collect from" the borrower a charge not to exceed one percent of the amount borrowed to cover origination or closing expenses. *See* 24 C.F.R. § 203.27(a)(2)(i). The *Bjustrom* court held that the yield spread premiums are not part of the one percent cap under the HUD/FHA regulations. *Bjustrom*, 178 F.Supp.2d at 1189. This Court agrees with the analysis in *Bjustrom* and holds that the yield spread premium paid by Homestreet Bank should not be included as part of the one percent cap on origination fees imposed by 38 C.F.R. § 36.4312(d)(2). Accordingly, the plaintiffs' claim for breach of contract fails as a matter of law.

## III. Second Cause of Action: Violation of RESPA, 12 U.S.C. § 2607

Although there has been abundant litigation concerning the legality of yield spread premiums, much of that litigation has centered on the issue of class certification. In contrast, the issue raised by this motion is whether the plaintiffs have stated a claim for which relief can be granted under the anti-kickback provisions of Section 8 of RESPA.[1] Thus, the plaintiffs' claim under Section 8 will survive this motion unless their complaint does not provide any factual basis for liability under Section 8.

Congress enacted the Real Estate Settlement Procedures Act in 1974 to shield home buyers "from unnecessarily high settlement charges caused by certain abusive practices." 12 U.S.C. § 2601(a). Section 8(a) of RESPA proscribes giving or accepting "any fee, kickback, or thing of value pursuant to any agreement or understanding ... that business incident to or a part of a real estate settlement service ... shall be referred to any person." 12 U.S.C. § 2607(a). Section 8(b) similarly prohibits the payment of any percentage or division of a charge except for services actually rendered. 12 U.S.C. § 2607(b). Section 8(c) provides a safe harbor, however, stating in relevant part that "[n]othing in this section shall be construed as prohibiting ... (2) the payment to any person of a bona fide salary or compensation or other payment for goods or facilities actually furnished or for services actually performed...." 12 U.S.C. § 2607(c)(2).

The difficulty in applying Section 8 to yield spread premiums is determining when such a payment is "for goods or facilities actually furnished or for services actually performed." Essentially, there are two competing interpretations of Section 8. In an official policy statement, HUD has developed a two-part test for determining liability under Section 8. 64 Fed.Reg. 10080.[2] The policy statement indicates unequivocally that HUD does not consider yield spread premiums to be per se legal or illegal. *Id.* at 10084. The first part of the test requires a determination of whether the yield spread premium was exchanged for goods, facilities, or services actually provided. *Id.* If the yield spread premium was paid to a broker in exchange for goods or services, then the next part of the test is whether the payment bears a reasonable relationship to the goods or services provided. *Id.* HUD considers the reasonableness prong of the test to be

---

1. Pub.L. 93–833, Section 8, Dec. 22, 1974, codified as amended at 12 U.S.C. § 2607.

2. *Real Estate Settlement Procedures Act (RESPA) Statement of Policy 1999–1 Regarding Lender Payments to Mortgage Brokers,* 64 Fed. Reg. 10080 (Dep't of Hous. & Urban Dev., March 1, 1999).

"determinative." *Id.* This test has been adopted by the majority of courts in applying Section 8 to yield spread premiums, including this Court. *See, e.g., LaCasse,* No. C01–1352Z, Slip Op. (W.D.Wash. March 15, 2002); *Bjustrom,* 178 F.Supp.2d at 1196; *Drootman v. First Nationwide Bank,* No. 97–252 PHX TSZ, slip op., at 8 (Feb. 12, 1999). The alternative interpretation, advocated by the Eleventh Circuit in *Culpepper v. Irwin Mortg. Corp.* ("*Culpepper III* "), holds that liability under Section 8 can be determined solely based upon whether or not the yield spread premium was paid as the direct result of the provision of goods or services. 253 F.3d 1324, 1331–32 (11th Cir.2001).

The plaintiffs strenuously argue that the HUD test is entitled to no deference and that *Culpepper III* should control. The Court disagrees. Instead, the Court holds that the appropriate rule for liability under Section 8 is the two-part test established by HUD. *See LaCasse,* No. C01–1352Z, Slip Op. (W.D.Wash. March 15, 2002); *Bjustrom,* 178 F.Supp.2d at 1196; *Drootman,* No. 97–252. As an official agency interpretation of a statute it is charged with administering, HUD's two-part test for liability is entitled to substantial deference. *See Chevron v. Natural Res. Def. Council,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *United States v. Mead Corp.,* 533 U.S. 218, 121 S.Ct. 2164, 2171, 150 L.Ed.2d 292 (2001). Under 24 C.F.R. § 3500.4(a)(1)(ii), HUD statements of policy published in the Federal Register have the legal effect of a regulation. Because HUD's test for liability is a reasonable and permissible interpretation of RESPA and HUD's own regulation, it is due substantial deference. *See LaCasse,* No. C01–1352Z at 11; *Bjustrom,* 178 F.Supp.2d at 1196.

■ Under HUD's test for liability, in order for the defendant to prevail on its Rule 12(c) motion, the plaintiffs must have failed to allege that Homestreet's yield spread premium payments (1) are not for goods or services, and (2) do not bear a reasonable relationship to any goods or services provided. From reviewing the plaintiffs' complaint, it appears that the plaintiffs have plead facts conforming to the rule of liability set forth in *Culpepper III* rather than HUD's test for liability. The plaintiffs' claim seems to rest on the assertion that the yield spread premium paid in this case cannot be for goods and services because the one percent origination fee was intended to fully compensate the mortgage broker for any services rendered. *See* First Amended Complaint at ¶ 31. However, even if true, this fact merely demonstrates that the Geracis intended the origination fee as full compensation for services. The plaintiffs fail to allege any facts that, if proven, would demonstrate that the yield spread premium was not paid as compensation for goods or services or that it does not bear a reasonable relationship to any goods or services that were actually provided.

The plaintiffs' theory of the case presumes that the yield spread premium violates the VA one percent origination fee cap. From this the plaintiffs would seem to have the Court conclude that Homestreet's payment of this fee must be for a referral fee because it cannot be for goods or services if it exceeds the one percent cap. However, this argument rests upon the faulty premise that all payments, whether paid by the borrower or the lender, are restricted to one percent of the value of the loan. Although the origination fee may have been intended by the Geracis as full compensation for any services provided to them by Windermere, the plaintiffs have alleged no facts that would prove that the yield spread premium was not compensation for goods or services provided to Homestreet by Windermere. A yield spread premium is illegal only if it is not exchanged for goods or

services actually provided. The operative test is whether the yield spread premium does or does not bear a reasonable relationship to the value of any goods or services that were actually provided. Because the plaintiffs have failed to allege any facts that satisfy this test, their RESPA claim fails as a matter of law.

## IV. Third Cause of Action: Unjust Enrichment

The plaintiffs' third cause of action for unjust enrichment is derivative of the plaintiffs' claims for relief for breach of contract and violation of Section 8 of RESPA. In other words, the plaintiffs contend that they conferred a benefit on the defendant in the form of higher interest rate payments; that the higher interest rates were collected to enable the defendant to make an unlawful yield spread premium payment; and that the defendant was thereby unjustly enriched, entitling the plaintiffs to restitution of the excess interest paid as a result of the yield spread premiums. Because the plaintiffs failed to establish a valid claim for relief for breach of contract or a valid claim under Section 8 of RESPA, their unjust enrich claim must also fail.

## V. Motion to Stay

The plaintiffs seek to stay these proceedings pending the outcome of two cases currently on appeal before the Ninth Circuit Court of Appeals, *Schuetz v. Bank One Mortg.*, No. 01–16206 and *Bjustrom v. Trust One Mortg.*, *supra*, No. 01–36076. The plaintiffs argue that a stay will conserve valuable judicial and litigant resources since the Court of Appeals decision will decide the appropriate level of deference to be accorded to HUD's inter-

pretation of Section 8, which will in turn establish the proper rule of liability in this case. Although the Court is mindful of the need to conserve judicial and litigant resources, it declines to exercise its discretion to stay these proceedings. Resources will only be conserved to the extent that the Court of Appeals decides in the plaintiffs' favor. In the event that the Court of Appeal's decision is adverse to the plaintiffs, there would be no conservation of judicial or litigant resources. Instead, this matter will have been needlessly delayed. Given that the defendant's motion has been fully and extensively briefed by both parties, there is no compelling reason to delay the resolution of this case at this point simply to await the outcome of the *Schuetz* or the *Bjustrom* cases.

### CONCLUSION

For the reasons set forth above, the plaintiffs have failed to allege facts sufficient to state a claim for which relief may be granted. Accordingly, the defendant's motion for judgment on the pleadings, docket no. 17, is hereby GRANTED as to all of the plaintiffs' claims. The plaintiffs' second cause of action for violation of RESPA, 12 U.S.C. § 2607 and third cause of action for unjust enrichment are DISMISSED without prejudice. The plaintiffs' claim for breach of contract is DISMISSED with prejudice. The plaintiffs' motion for leave to file a surreply brief, docket no. 29, and the plaintiffs' motion to stay, docket no. 39, are hereby DENIED.[3]

IT IS SO ORDERED.

---

3. The surreply brief requests that the Court strike certain material contained within pages 13–15 of the defendant's reply brief. The plaintiffs' motion for leave to file a surreply was filed on February 22, 2002, some 16 days

after the defendant's reply brief was filed. Local Rule 7(g)(2) requires that such a surreply must be filed within 5 days of the filing of the reply brief. The substance of the plain-

tiffs' request to strike is that the defendant's characterizations of a Senate hearing being "orchestrated" by the plaintiff are disrespectful to Congress and inaccurate, and that the defendant's statement that the plaintiffs' expert witness relies on flawed data is erroneous. *See* Surreply, attached to Motion for Leave to File Surreply, docket no. 29. Because the plaintiffs fail to provide any reason other than their unfamiliarity with the local rules as a basis for their failure to comply with the requirements of LR 7(g)(2), the plaintiffs' motion for leave to file a surreply on this collateral issue is DENIED.