**Thomas R. DREILING, a shareholder of Infospace, Inc., Plaintiff,**

v.

**AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY, INC., a New York corporation, Defendant.**

No. C03–3740Z.

United States District Court, W.D. Washington, at Seattle.

July 23, 2004.

Richard E. Spoonemore, Stephen John Sirianni, Sirianni Youtz Meier & Spoonemore, Seattle, WA, for Plaintiff.

Jason C. Vigna, Robert E. Zimet, Skadden Arps Slate Meagher & Flom, New York, NY, Roger D. Mellem, Tim J. Filer, Foster Pepper & Shefelman, Seattle, WA, for Defendants.

## ORDER

ZILLY, District Judge.

This matter comes before the Court on Defendant American Express Travel Related Services Company's Motion to Dismiss the Amended Complaint, docket no. 13. Having considered the briefs in support of and in opposition to the motion, and the oral argument of counsel on Thursday, June 10, 2004, the Court now GRANTS the motion.

### BACKGROUND

#### The Parties

This is a shareholder's derivative suit brought by plaintiff Thomas R. Dreiling, a shareholder of InfoSpace, Inc., against defendant American Express Travel Related Services Company, Inc. ("TRS"). Plaintiff seeks to recover "short swing" profits, that is, profits earned within a six month period by the purchase and sale of securities, alleged to have been "realized" by TRS in InfoSpace securities dealings in violation of Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b). Plaintiff has been an InfoSpace shareholder at all times since his initial purchase of InfoSpace stock on or about December 8, 1999.

Am. Compl., docket no. 5, ¶¶ 1, 6. InfoSpace is a nominal defendant.

#### TRS's Director Status

From January 21, 2000 through May 21, 2001, David C. House served on the Board of Directors of InfoSpace during which period Mr. House was an executive officer of TRS. *Id.* ¶ 8. TRS deputized Mr. House to represent its interests on InfoSpace's board of directors. *Id.* ¶ 13.

#### TRS's Purchase and Sales of InfoSpace Stock

TRS acquired a substantial amount of InfoSpace common stock as a result of a February 25, 2000 merger of Infospace and a company in which TRS had invested, Prio, Inc. ("Prio"). *Id.* ¶ 7, Ex. A at 2. The InfoSpace board of directors approved the merger and TRS's accompanying acquisition of InfoSpace stock.[1] The amended complaint alleges that "[w]ithin periods of less than six months, [TRS] engaged in a purchase and corresponding sales, and/or sales and a corresponding purchase, of InfoSpace stock." *Id.* ¶ 10. The demand letter attached to the amended complaint states that the six month period at issue is "from February 25, 2000 through August 24, 2000." *Id.* ¶ 7, Ex. A at 1.

#### TRS's Short–Swing Profits

TRS profited by its purchase and sales, and/or sales and purchase, of InfoSpace stock by engaging in such transactions within six month periods. *Id.* ¶¶ 12, 15.

#### TRS's Failure to Report Trading Activity to Securities and Exchange Commission

TRS failed to report any sales of InfoSpace stock to the Securities and Exchange Commission ("SEC") at any time after

---

1. Plaintiff does not allege that TRS's acquisition of InfoSpace stock was not approved by the InfoSpace board of directors, and the parties' arguments are based on the assumption that it was approved by the board.

February 25, 2000. *Id.* ¶¶ 7, 11, Ex. A at 2.

### Plaintiff's Demand upon InfoSpace

By letter dated September 17, 2003, plaintiff "demand[ed] that [InfoSpace's] Board of directors prosecute claims against American Express Company for violations of § 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b)" within sixty days. *Id.* The letter further stated, in part:

> American Express Company should be compelled to disgorge the profits it made through the purchase and sales of InfoSpace stock within the six month period from February 25, 2000 through August 24, 2000. At all times throughout this period, American Express Company was subject to the reporting requirements of § 16(a) and the short-swing trading prohibition of § 16(b), by virtue of its representation on the InfoSpace board of directors through its deputy, David C. House. Despite the requirements of § 16(a), American Express Company failed to file Forms 4 throughout Mr. House's tenure on the InfoSpace board, which ran from January 21, 2000 through May 21, 2001.

*Id.* ¶ 7, Ex. A at 1–2.

By letter dated November 14, 2003, InfoSpace notified plaintiff that InfoSpace's Board of Directors did not intend to pursue the alleged claim against American Express Company. *Id.* ¶ 8; Mellem Decl., docket no. 14, Ex. F.

### Plaintiff's Filing of Complaint and Amended Complaint

On November 26, 2003, plaintiff filed a complaint against "American Express Company, a New York Corporation, including its divisions and subsidiaries." Compl. docket no. 1. On December 15, 2003, plaintiff filed an amended complaint against "American Express Travel Related Services Company, Inc." ("TRS"). Am. Compl., docket no. 5.

### TRS's Motion to Dismiss

TRS moves to dismiss plaintiff's amended complaint. TRS's Mot. Dismiss, docket no. 13. Plaintiff opposes TRS's motion. Pl.'s Response, docket no. 16. TRS has filed a reply brief in support of its motion. TRS's Reply, docket no. 21.

### DISCUSSION

### I. *Standard of Review*

TRS moves to dismiss plaintiff's amended complaint pursuant to the Federal Rules of Civil Procedure 8(a), 9(f) and 12(b)(6). Rule 12(b)(6), which provides a basis for the dismissal of a complaint for failure to state a claim upon which relief can be granted, *see* Fed.R.Civ.P. 12(b)(6), must be read in conjunction with Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a); *United States v. Real Prop.*, 234 F.Supp.2d 1136, 1137 (C.D.Cal.2002). Rule 12(b)(6) should also be read in conjunction with Rule 9(f), which provides that "[f]or the purpose of testing the sufficiency of a pleading, averments of time and place are material and shall be considered like all other averments of material matter." Fed.R.Civ.P. 9(f).

Under Rule 12(b)(6), a complaint "should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir.2002) (citations omitted); *see also Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir.1997) (issue is not whether plaintiff will ultimately prevail, but whether claimant is entitled to offer evidence to support the claim). In deciding a motion to dismiss, the court accepts as true all material allegations in the complaint and construes them in the light most favorable to the plaintiff. *See Newman v. Sathyavaglswaran*, 287 F.3d 786, 788 (9th

Cir.2002); *see also Williams v. Gorton*, 529 F.2d 668, 672 (9th Cir.1976) (Rule 12(b)(6) motions are disfavored, and any doubts should be resolved in favor of the pleader). Courts dismiss claims when the plaintiff alleges "insufficient facts under a cognizable legal claim." *Smilecare Dental Group v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir.1996).

## II. Sections 16(a) and 16(b) of the Securities Exchange Act of 1934

Section 16(a) of the Securities Exchange Act of 1934 requires "insiders" including directors, officers, and principal stockholders (i.e., those owning more than ten per cent of any class of security) of an issuer to file monthly reports with the SEC regarding their trading activity, noting the amount of equity they own and any changes in ownership. 15 U.S.C. § 78p(a).

"For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer," Section 16(b) of the Securities Exchange Act of 1934 prohibits directors, officers and principal stockholders from making short-swing profits from the purchase and sale, or sale and purchase, of securities of the issuer within a six month period. 15 U.S.C. § 78p(b). "[A]ny profit realized by him ... shall inure to and be recoverable by the issuer." *Id.*

A plaintiff suing under Section 16(b) is ultimately required to show that the defendant: "(1) realized a profit, (2) from a purchase and sale or sale and purchase within a period of less than six months, (3) of an equity security of [the issuer], (4) in a transaction that was not exempt by the rules and regulations of the Securities and Exchange Commission." *Citadel Holding Corp. v. Roven*, 26 F.3d 960, 963–64 (9th Cir.1994).

## III. TRS's Motion to Dismiss

TRS argues that plaintiff's amended complaint should be dismissed on five grounds: (1) the amended complaint fails to assert the approximate dates of TRS's alleged sales; (2) the amended complaint provides no basis for tolling the statute of limitations, which has now run; (3) the amended complaint fails to adequately plead insider status; (4) the amended complaint fails to include adequate demand allegations; and (5) the SEC Rule 16b–3(d) exempts TRS from potential Section 16(b) liability. For the reasons outlined herein, the Court rejects the first four grounds for relief but concludes that the fifth ground regarding the SEC Rule 16b–3(d) exemption has merit.

### A. Approximate Dates of TRS's Alleged Sales of InfoSpace Stock

■ TRS moves to dismiss plaintiff's amended complaint based on plaintiff's failure to set forth the approximate dates on which the alleged sales of InfoSpace stock occurred. TRS attacks for vagueness paragraph 10 of the amended complaint, which alleges that, "Within periods of less than six months, [TRS] [2] engaged in a purchase and corresponding sales, and/or sales and a corresponding purchase, of InfoSpace stock." TRS's Mot. Dismiss at 7; Am. Compl. ¶ 10.

TRS overlooks the demand letter attached to the complaint, which specifies that "the purchase and sales of InfoSpace stock [occurred] within the six month period from February 25, 2000 through August 24, 2000." Am. Compl., Ex. A at 1. Documents attached to a plaintiff's complaint

---

**2.** The amended complaint refers to American Express Travel Related Services Company, Inc. as "AmEx," *see* Am. Compl. ¶ 3, whereas this Order refers to it as "TRS."

are properly part of a court's review as to whether a plaintiff can prove any set of facts in support of its claim. *Amfac Mortg. Co. v. Ariz. Mall*, 583 F.2d 426, 429–30 (9th Cir.1978). Contrary to TRS's argument that all allegations must be contained in the complaint, *see* TRS's Reply, docket no. 21, at 2, "[t]he court is not limited by the mere allegations contained in the complaint." *Amfac*, 583 F.2d at 429.[3] In the present case, plaintiff set forth the actual merger date (i.e., the acquisition date). Plaintiff then alleged that the sales of TRS's InfoSpace stock occurred in the subsequent six month period. More specific allegations of the sales dates were not possible given the failure of TRS to file Section 16(a) reports. *See Citadel Holding Corp.*, 26 F.3d at 965 (Section 16(a) "serve[s] to provide a record of acquisitions and dispositions of securities" that will assist in the determination of Section 16(b) liability). Plaintiff's allegations as to dates of TRS's purchase and sales transactions therefore survive a motion to dismiss.

### B. *Tolling of Statute of Limitations*

■ TRS moves to dismiss plaintiff's amended complaint on the basis that the statute of limitations has now run. Section 16(b) provides that no suit under the section "shall be brought more than two years after the date such profit was realized." 15 U.S.C. § 78p(b). Plaintiff's Section 16(b) claim must be dismissed unless the two-year statute of limitations is tolled because TRS's latest securities transaction occurred on August 24, 2000, and the original complaint was filed more than two years later, on November 26, 2003.

Plaintiff alleges that TRS failed to report the purchase and sales transactions as required under Section 16(a) and argues that the two-year statute of limitations is thereby tolled. Am. Compl. ¶ 11. "[T]he failure to file insider reports tolls the statute of limitations on a section 16(b) action." *Kay v. Scientex Corp.*, 719 F.2d 1009, 1014–15 (9th Cir.1983) (citing *Whittaker v. Whittaker Corp.*, 639 F.2d 516 (9th Cir. 1981)). In *Whittaker*, the Ninth Circuit held that "[t]he two-year period for Section 16(b) begins to run when the transactions are disclosed in the insider's Section 16(a) report." 639 F.2d at 530. The primary justification for the ruling in *Whittaker* was that "shareholders' derivative suits would be nullified" "if insiders could insulate their transactions from the scrutiny of outside shareholders by failing to file Section 16(a) reports and waiting for the time limit to pass." *Whittaker*, 639 F.2d at 528; *see also Kay*, 719 F.2d at 1015.

TRS argues that *Whittaker* does not apply here because "directors by deputization" are not required to file Section 16(a) reports. TRS's Mot. Dismiss at 9–10. TRS relies heavily on a district court case that recognized the concept of "deputization" within the meaning of Section 16(b), but stated that "the concept of 'deputization' has not been extended to the reporting requirements of [S]ection 16(a)." *Stirling v. Chemical Bank*, 382 F.Supp. 1146, 1152 (S.D.N.Y.), *aff'd* 516 F.2d 1396 (2d. Cir.1975).

An official agency interpretation of a rule is entitled to substantial deference. *Geraci v. Homestreet Bank*, 203 F.Supp.2d 1211, 1214 (W.D.Wash.2002), *aff'd* 347 F.3d 749 (9th Cir.2003). The SEC has rejected the statement in *Stirling* and has declared that a person who deputizes a director (i.e., TRS) *is* subject to the reporting requirements of Section 16(a). In 1981, the SEC issued a release to explain the rules promulgated under Sections 16(a) and 16(b) of the Securities Exchange Act of 1934. *Interpretive Release on Rules Applicable to*

---

3. TRS admits in Footnote 14 of its motion to dismiss, docket no. 13, that "[t]he Court may, of course, freely consider [the attached demand letter] on a motion to dismiss."

*Insider Reporting and Trading,* SEC Release No. 34–18114, 1981 WL 31301, at *5 (Sept. 24, 1981) (the "1981 Release") (Spoonemore Decl., docket no. 17, Ex. C). Using a question and answer format, the 1981 Release states:

Question: Can the term 'director' include a person who designates another to be a director on a theory of deputization?

Answer: Yes. *A person who has the power, by agreement or otherwise, to name another to be a corporate director* is likely to have the same sort of access to inside information by reason of that relationship as any other insider and *should be considered a director for purposes of section 16(a) of the Exchange Act.*

Spoonemore Decl., Ex. C at 6 (emphasis added). In 1988, the SEC expressly rejected the statement in *Stirling* and reiterated its 1981 stance, stating:

Although most of the cases involving deputization have not addressed specifically whether deputizing entities are subject to the reporting requirements of section 16(a), the court stated in *Stirling v. Chemical Bank,* 382 F.Supp. 1146, 1152 (S.D.N.Y.1974), *aff'd* 516 F.2d 1396 (2d. Cir.1975), that the concept of deputization has never been extended to that section. The Commission, however, stated in Release 34–18114, Q.3, that a *person who designates another to be a director should be deemed a director for purposes of section 16(a).*

*Ownership Reports and Trading by Officers, Directors and Principal Stockholders,* 53 Fed.Reg. 49,997 (Dec. 2, 1988), 1988 WL 1016148, at *8 n. 50 (the "1988 Re-

lease") (Spoonemore Decl., Ex. D at 11) (emphasis added); [4] *see also* John C. Coffee, Jr., *The SEC and the Institutional Investor: A Half–Time Report,* 15 Cardozo L.Rev. 837, 896 (1994) ("In the SEC's view, any person or entity that has expressly or impliedly deputized an individual to serve as its representative on a company's board of directors is subject to ... the reporting provisions of section 16.").

The Court accepts as true plaintiff's allegation that TRS deputized Mr. House to represent its interests on InfoSpace's board of directors. *See* Am. Compl. ¶ 13. Under these facts, TRS was subject to the reporting requirements of Section 16(a). Because TRS failed to file reports required by Section 16(a), the two-year statute of limitations is tolled under *Whittaker.*

### C. Insider Status

■ TRS moves to dismiss plaintiff's amended complaint based on plaintiff's failure to adequately plead insider status. Plaintiff's amended complaint alleges that:

[TRS] was, from January 21, 2000 through May 21, 2001, a 'director' for purposes of § 16(a) and (b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(a). [TRS] deputized David C. House to represent its interests on InfoSpace's board of directors. For purposes of liability under § 16(b), [TRS] was an InfoSpace director and statutory insider at all relevant times.

Am. Compl. ¶ 13. TRS argues that "[t]he only factual allegation in those three sentences is the bald assertion that TRS somehow deputized InfoSpace director David House to represent its interests, and

---

4. The SEC did not change its position in its final regulations in 1991. *See* Exchange Act Release No. 34–28869, 1991 WL 292000 at *4 n. 27, 1991 SEC LEXIS 171, at *9 n. 27 (Feb. 8, 1991) (the "1991 Release"). Footnote 27 in the 1991 Release refers to case law regard-

ing the deputization theory under Section 16(b), not the reporting requirements of 16(a). *See id.* (citing *Blau v. Lehman,* 368 U.S. 403, 82 S.Ct. 451, 7 L.Ed.2d 403 (1962); *Feder v. Martin Marietta,* 406 F.2d 260 (2d Cir.1969)).

therefore, became an InfoSpace director itself." TRS's Mot. Dismiss at 11. TRS argues that this allegation is deficient for two reasons: first, it is conclusory; second, it is contradicted by facts in plaintiff's possession and in the public record.

TRS contends that "conclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim." TRS's Mot. Dismiss at 11.[5] In *McCarthy v. Mayo*, 827 F.2d 1310, 1316 (9th Cir.1987), the Ninth Circuit affirmed the dismissal of a Section 1983 claim for failure to state a claim where "plaintiff would have to allege that [the individual defendants] controlled the decision-making process of the prosecutor" and where "the complaint contains neither an allegation of control nor the facts to support such an allegation." Thus, the *McCarthy* court required an allegation of control *or* facts to support such an allegation, not both. Here, plaintiff has not only alleged that TRS is a director but also has alleged a fact in support of that conclusion—i.e., that TRS is a director because it deputized Mr. House to represent its interests on InfoSpace's board of directors. Because a complaint must satisfy only the simple notice pleading requirements of Rule 8(a), *see Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125 (9th Cir.2002) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)), plaintiff's allegations regarding TRS's director status are sufficient to defeat a motion to dismiss.

TRS also contends that plaintiff's allegation that TRS is a director by deputization is contradicted by facts in plaintiff's possession and in the public record. The Court rejects TRS's attempt to transform its motion to dismiss into a motion for summary judgment. "[T]he issue of deputization is a question of fact to be settled case by case and not a conclusion of law." *Feder*, 406 F.2d at 263 (citing *Blau*, 368 U.S. at 408–09, 82 S.Ct. 451); SEC 1981 Release, n.16 (Spoonemore Decl., Ex. C at n. 16).

### D. Demand Allegations

■ Section 16(b) contains a demand requirement, which permits a shareholder to sue only if the issuer fails or refuses to bring suit within sixty days after the shareholder's demand. 15 U.S.C. § 78p(b). The demand requirement "serves to prevent shareholders and the courts from interfering in matters normally within the province of a corporation's management." *Colan v. Monumental Corp.*, 524 F.Supp. 1023, 1027 (N.D.Ill.1981).

TRS moves to dismiss plaintiff's amended complaint based on plaintiff's failure to include adequate demand allegations. A threshold issue is whether TRS has standing to complain of any deficiencies in the plaintiff's demand upon InfoSpace. Although there is no Ninth Circuit case law directly on point, other federal courts have held that only the issuing corporation, and not a corporate insider, has standing to object to any deficiency in, or even the total absence of, a plaintiff-shareholder's demand on directors. *Colan*, 524 F.Supp. at 1028; *Prager v. Sylvestri*, 449 F.Supp. 425, 429 (S.D.N.Y.1978). Under these cases, TRS lacks standing to challenge plaintiff's demand because TRS is the insider defendant. In contrast, InfoSpace would have standing; however, InfoSpace, who is a party to this action, has not challenged plaintiff's demand allegations.

---

**5.** Defendants rely on *Shurgard Storage Ctrs., Inc. v. Safeguard Self Storage, Inc.*, 119 F.Supp.2d 1121, 1122 (W.D.Wash.2000), which states this legal proposition in setting forth the motion to dismiss standard; however, *Shurgard* does not involve a dismissal based on conclusory allegations.

Even if TRS has standing, plaintiff's demand on InfoSpace was adequate. Plaintiff's amended complaint alleges that "By letter dated September 17, 2003, plaintiff made a statutory sixty-day demand on InfoSpace" and also attaches the demand letter as Exhibit A to the amended complaint. Am. Compl. ¶ 7. The amended complaint further alleges that InfoSpace rejected plaintiff's demand:

> By letter dated November 14, 2003, InfoSpace's outside counsel, on behalf of InfoSpace, acknowledged that 'David C. House served on the Board of Directors of the Company [InfoSpace] from January 21, 2000 until May 21, 2001,' during which period (i) 'Mr. House was an executive director of AmEx' and (ii) 'sales of shares of common stock of the Company [were] made by AmEx,' but advised plaintiff that 'the Board of Directors of the Company does not intend to pursue the alleged claim against AmEx.'

*Id.* ¶ 8. As a result of "InfoSpace's rejection of plaintiff's demand, all rights to maintain this action under § 16(b) against AmEx fully vested in plaintiff." *Id.* ¶ 9.

Rule 23.1 of the Federal Rules of Civil Procedure requires that, in a derivative action by a shareholder, the complaint must "allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority." Fed. R.Civ.P. 23.1. Plaintiff's amended complaint, with the demand letter attached, complies with Rule 23.1. However, Rule 23.1 is not the source of the demand requirement but rather is the procedural manifestation of the state law of corporate governance regarding the right of a shareholder to bring a derivative suit on behalf of a corporation. *Levner v. Prince Alwaleed Bin Talal Bin Abdulaziz al Saud,* 903 F.Supp. 452, 456 (S.D.N.Y.1994).

The substantive requirements of demand are governed by the law of the state of incorporation. *Id.* InfoSpace is incorporated in Delaware. *See* Mellem Decl., Ex. A at 1. *Levner,* a case that also involved a Delaware company, outlined the substantive requirements of demand: "[A]t a minimum, the demand made upon the board of directors must identify the alleged wrongdoer, describe the factual basis of the wrongful acts and the harm caused to the corporation, and request remedial relief." *Levner,* 903 F.Supp. at 456.

TRS argues that plaintiff's demand neither identified TRS as the alleged wrongdoer nor requested remedial relief from InfoSpace. TRS's Mot. Dismiss, at 13. The demand letter identified "American Express Company" as the alleged wrongdoer, not TRS. *See* Am. Compl., Ex. A. However, the demand letter did summarize plaintiff's position that "American Express Company (directly *or through its subsidiaries* ) sold substantial amounts of InfoSpace stock from February 25, 2000 through August 24, 2000, thereby violating § 16(b)'s prohibition against short-swing trading by company insiders." *Id.,* Ex. A at 2 (emphasis added). TRS does not dispute that it is a subsidiary of American Express Company. Plaintiff's demand letter provided sufficient notice to InfoSpace that AmEx *and its subsidiaries* were implicated by the letter and sufficiently identified the wrongdoer pursuant to *Levner.* The demand letter also sufficiently requested remedial relief by "demand[ing] that the Board of Directors prosecute claims against American Express Company for violations of § 16(b)" to compel American Express Company "to disgorge the profits it made through the purchase and sales of InfoSpace stock." *Id.,* Ex. A at 1. In sum, plaintiff's amended complaint includes adequate demand allegations.

**E.   *SEC Rule 16b–3(d)(1) Exemption***

■■■ The purpose of Section 16(b), as stated in The Securities Exchange Act of

1934, is to "prevent[ ] the unfair use of information which may have been obtained by such beneficial owner, director or officer by reason of his relationship to the issuer." *See* 15 U.S.C. 78p(b). The United States Supreme Court explains the purpose of Section 16(b) as follows:

> Congress recognized that insiders may have access to information about their corporations not available to the rest of the investing public. By trading on this information, these persons could reap profits at the expense of less well informed investors. In § 16(b) Congress sought to 'curb the evils of insider trading [by] . . . taking the profits out of a class of transactions in which the possibility of abuse was believed to be intolerably great.' It accomplished this by defining directors, officers and beneficial owners as those presumed to have access to inside information and enacting a flat rule that a corporation could recover the profits these insiders made on a pair of security transactions within six months.

*Foremost–McKesson, Inc. v. Provident Securities Co.*, 423 U.S. 232, 243–44, 96 S.Ct. 508, 46 L.Ed.2d 464 (1976) (citing *Kern County Land Co. v. Occidental Petroleum Corp.*, 411 U.S. 582, 591–92, 93 S.Ct. 1736, 36 L.Ed.2d 503 (1973), and citing and quoting *Reliance Electric Co. v. Emerson Electric Co.*, 404 U.S. 418, 422, 92 S.Ct. 596, 30 L.Ed.2d 575 (1972) (footnote omitted)). Unlike Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), as implemented by Rule 10b–5, 17 C.F.R. § 240.10b–5, Section 16(b) is a strict liability statute that imposes liability "without proof of actual abuse of insider informa-

tion, and without proof of intent to profit on the basis of such information." *Kern County Land Co.*, 411 U.S. at 594, 93 S.Ct. 1736; *see also McKesson*, 423 U.S. at 251, 96 S.Ct. 508 ("Section 16(b) imposes a strict prophylactic rule" of "liability without fault within its narrowly drawn limits.").

The statute expressly authorizes the SEC to exempt from Section 16(b) coverage transactions that are not comprehended within the purpose of Section 16(b). *Id.* (Section 16(b) "shall not be construed to cover . . . any transaction or transactions which the Commission by rules and regulations may exempt as not comprehended within the purpose of the subsection."). No liability is imposed under Section 16(b) if the rules and regulations of the SEC have exempted either the purchase or the sale transaction. *Citadel Holding Corp.*, 26 F.3d at 963–64.[6]

TRS moves to dismiss plaintiff's amended complaint on the basis that the SEC Rule 16b–3(d)(1), 17 C.F.R. § 240.16b–3(d)(1) ("Rule 16b–3(d)(1)"), exempts TRS's "purchase" transaction. Rule 16b–3, entitled "Transactions between an issuer and its officers or directors," provides, in pertinent part:

> (a) General. A transaction between the issuer (including an employee benefit plan sponsored by the issuer) and an officer or director of the issuer that involves issuer equity securities shall be exempt from section 16(b) of the Act if the transaction satisfies the applicable conditions set forth in this section.

> \*     \*     \*     \*     \*     \*

---

**6.** Analogously, the mechanical requirements of Section 16(b) as to insider status must also be strictly met at both the time of the purchase and the time of the sale of the securities before liability will be imposed. *See McKesson*, 423 U.S. at 254, 96 S.Ct. 508 (excluding from the operation of Section 16(b) an owner

of less than 10 percent at the time of the purchase); *Reliance*, 404 U.S. at 423–24, 92 S.Ct. 596 (excluding from the operation of Section 16(b) an owner of more than 10 percent who sold enough shares to bring his holdings below 10 percent, and later—but still within six months—sold additional shares).

(d) Grants, awards and other acquisitions from the issuer. Any transaction involving a grant, award or other acquisition from the issuer (other than a Discretionary Transaction)[7] shall be exempt if:

> (1) The transaction is approved by the board of directors of the issuer, or a committee of the board of directors that is composed solely of two or more Non–Employee Directors ...

17 C.F.R. § 240.16b–3(a) and (d)(1). TRS argues that Rule 16b–3(d) exempts *all* issuer-to-insider securities transactions approved by an issuer's board of directors. TRS's Mot. Dismiss at 14. Plaintiff disagrees with TRS's broad interpretation of Rule 16b–3(d) and argues that the rule is limited to issuer-to-insider securities transactions that relate to compensation. Pl.'s Response at 12–13. Plaintiff contends that the statutory construction rule of *ejusdem generis* should apply to narrowly interpret the "other transactions" phrase in Rule 16b–3(d)(1) to give effect to the more specific terms that precede it, namely "grants and awards." *Id.* at 13 (citing *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 114–15, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001)).

Although "[t]he judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent," the Court must accord "considerable weight ... to an executive department's construction of a statutory scheme it is entrusted to administer." *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Thus, to reconcile the parties' competing views of the scope of Rule 16b–3(d), the Court first looks to the SEC's interpretation of its own rule.

Prior to 1996, Rule 16b–3 exempted only transactions pursuant to employee benefit plans. The SEC revised Rule 16b–3 in 1996 and expressly stated that under the new Rule 16b–3, "unlike the current rule, *a transaction need not be pursuant to an employee benefit plan or any compensatory program to be exempt, nor need it specifically have a compensatory element." Ownership Reports and Trading by Officers, Directors and Principal Security Holders*, Exchange Act Release No. 34–37260, 61 Fed.Reg. 30,376, 30,378–79 (June 14, 1996) (the "1996 Release") (footnotes omitted) (emphasis added). The SEC's interpretation of the rule, combined with the rule's plain language, which does not on its face require any compensatory nexus, do not support plaintiff's position that Rule 16b–3(d) is limited to issuer-to-insider transactions that relate to compensation.

There is no controlling Ninth Circuit case law interpreting Rule 16b–3(d)'s relevant "[g]rants, awards and other acquisitions from the issuer" language. The two Courts of Appeals that have interpreted this language have taken different approaches.

The Second Circuit has adopted the broad interpretation that TRS advocates. *See Gryl ex rel. Shire Pharms. Group Plc v. Shire Pharms. Group PLC*, 298 F.3d 136 (2d Cir.2002). The individual defendants in *Gryl* were stock option holders in "Company A" prior to a merger, and all of their stock options were automatically converted into stock options of "Company B" pursuant to a merger plan that determined the amount, price and timing of the securities transaction. *Id.* at 139, 142–43. It was undisputed that within six months of the merger, the defendants, who were in-

---

**7.** Rule 16b–3(d)'s inapplicability to "Discretionary Transactions," as defined in Rule 16b–3(b)(1), is not relevant here.

siders of Company B, exercised their new stock options and made a profit. *Id.* at 139. The *Gryl* court held that Rule 16b–3(d) exempted the defendants' acquisition of Company B's securities as a basis for liability under Section 16(b) upon determining that: (1) the defendants acquired the issuer equity securities from the issuer, (2) the defendants were insiders, and (3) the issuer's board of directors approved of the acquisition. *See id.* at 141–43. The Second Circuit did not limit the types of issuer-to-insider transactions that would be deemed exempt within the meaning of Rule 16b–3(d)'s "[g]rants, awards and other acquisitions" provision. *See id.* Even if the insiders in *Gryl* obtained the stock options of Company B as a form of compensation, the Second Circuit did not discuss, let alone rely upon, the compensatory purpose of the stock options as a prerequisite for applying Rule 16b–3(d).

In holding that Rule 16b–3(d) exempted the acquisition of securities via the board-approved merger, the Second Circuit in *Gryl* relied on the SEC's 1996 release accompanying the promulgation of Rule 16b–3 and stated:

> [T]ransactions between an issuer and its directors or officers 'do not appear to present the same opportunities for insider profit on the basis of non-public information as do market transactions by officers and directors. Typically, where the issuer, rather than the trading markets, is on the other side of an officer or director's transaction in the issuer's equity securities, any profit obtained is not at the expense of uninformed shareholders and other market participants of the type contemplated by the statute.'

*Gryl,* 298 F.3d at 145 (quoting 1996 Release, 61 Fed.Reg. at 30,377). The Second Circuit concluded that "[s]o long as the relevant securities transaction is between an issuer and insider, and so long as the terms and conditions of that transaction

receive advance approval by the board of directors, there exists sufficient protection to ensure that any short-swing profit taking that follows is not the result of unfair market manipulation." *Gryl,* 298 F.3d at 145–46.

In contrast, the Third Circuit rejected a broad interpretation of the phrase "other acquisitions" in a case involving the automatic reclassification of preferred stock into common stock upon the completion of a contemplated Initial Public Offering. *See Levy v. Sterling Holding Co., LLC,* 314 F.3d 106 (3d Cir.2002), *cert. denied,* 540 U.S. 947, 124 S.Ct. 389, 157 L.Ed.2d 277 (2003). In *Levy,* the insiders acquired common stock pursuant to the automatic reclassification and, within six months, sold the common stock for a profit. *See id.* at 109. The Third Circuit held that the Rule 16b–3(d) exemption was inapplicable, and thus the insiders' acquisition of common stock was not immunized from Section 16(b) liability, even though the reclassification was approved by the issuer's board of directors. *See id.* at 124–25. The Third Circuit distinguished *Gryl* by asserting that the stock options in *Gryl* had a compensatory nexus. *Id.* at 124. The Third Circuit acknowledged that the SEC's 1996 Release statement that "a transaction need not ... to be exempt ... specifically have a compensatory element" "appears to cut against our position." *Id.* However, the Third Circuit concluded that "the weight of the SEC's pronouncements on Rule 16b–3, and particularly Rule 16b–3(d), suggest that the transaction should have some connection to a compensation-related function." *Id.*

After the ruling in *Levy* was issued, the SEC filed an amicus brief in support of the *Levy* defendants' petition for a rehearing or rehearing *en banc.* Mellem Decl., Ex. G. The Court considers this amicus brief. *See Auer v. Robbins,* 519 U.S. 452, 461, 117

S.Ct. 905, 137 L.Ed.2d 79 (1997) (deferring to agency's interpretation as set forth in amicus brief). The SEC asserts that the Third Circuit's panel erroneously imposed a "compensatory purpose" condition that "does not appear in the rule" and that "runs directly contrary to the Commission's stated reasons for adopting the exemption." *Id.* at G–116. The SEC explains that it is not the compensatory nature of the transactions that make them suitable for exemption from Section 16(b); rather, the gate-keeping condition of requiring the approval of the issuer's board of directors "provid[es] the necessary protection to justify exemption under Rule 16b–3(d)." *Id.* at G–117. In light of the clear intention of the SEC not to limit Rule 16b–3(d)(1) to transactions that are compensation related, the Court rejects plaintiff's *ejusdem generis* regulatory construction argument. *See United States v. Willfong,* 274 F.3d 1297, 1304 (9th Cir.2001) (refusing to apply *ejusdem generis* where there was no uncertainty about the meaning of the term at issue, where a narrowing of the term would defeat the broad purpose of the regulation, and where the regulation did not refer to the suggested meaning); *cf. United States v. Tobeler,* 311 F.3d 1201, 1205–06 (9th Cir.2002) ("There is no need to resort to the rule of *ejusdem generis*" "[w]hen a statute's plain meaning is apparent" "especially in the presence of other indicia of legislative meaning or purpose.").

Here, the SEC in 1996 made clear its intention to exempt from Section 16(b) liability not only transactions pursuant to employee benefit plans but also transactions with "objective gate-keeping conditions" that "are not vehicles for the speculative abuse that section 16(b) was designed to prevent." 1996 Release, 61 Fed.Reg. at 30,377. The SEC attempted to eliminate any uncertainty about the scope of Rule 16b–3(d), as revised in 1996, by explicitly stating that "a transaction need not be pursuant to an employee benefit plan or any compensatory program to be exempt, nor need it specifically have a compensatory element." *Id.* at 30,378–79. The SEC reiterated its position in the amicus brief submitted in the *Levy* case.[8] A narrowing of the term "other transactions" as advocated by the plaintiff would clearly limit the broad purpose of the SEC's Rule 16b–3(d) exemption. *See United States v. Willfong,* 274 F.3d at 1304. The Court refuses to read a compensatory element into Rule 16b–3(d) where the rule does not refer to any compensatory element and where the regulatory agency has rejected such a requirement. *See id.; see also McKesson,* 423 U.S. at 252, 96 S.Ct. 508 ("Courts should not be quick to determine that, despite an acknowledged ambiguity, Congress intended [Section 16(b) ] to cover a particular transaction.").

The Court's construction of Rule 16b–3(d) not to require a compensatory element is not inconsistent with Section 16(b)'s purpose to curb insider trading. Where securities are acquired by "all eligible [shareholders], without regard to [in-

8. The SEC is currently proposing a rule amendment to Rule 16b–3(d) that seeks to eliminate the uncertainty generated by the *Levy v. Sterling* opinion by providing that any transaction involving an acquisition from the issuer (other than a Discretionary Transaction), including without limitation a grant or award, will be exempt if any one of the Rule's three existing alternative conditions is satisfied. *Ownership Reports and Trading by Offi-*cers, Directors and Principal Security Holders, Exchange Act Release No. 34–49895 (June 21, 2004). The Court does not consider this proposed amendment in making its decision. *See Citadel Holding Corp.,* 26 F.3d at 964 (noting that courts are obligated to evaluate a case according to the SEC rules operative at the time of the disputed transactions, as long as those rules were not inconsistent with the dictates of Section 16).

sider] status, as a means of fully effecting an overarching, value-adding corporate event (e.g., a merger)," there is "a diminished risk that the securities [acquisitions] are not motivated by a legitimate corporate purpose." *See Gryl,* 298 F.3d at 142. TRS, for example, had "no discretion unilaterally to alter in [its] favor the amount, price, [and] timing" of its acquisition of InfoSpace shares. *See id.* at 142–43. Accordingly, the Court declines plaintiff's invitation to declare Rule 16b–3(d), as interpreted by the SEC, invalid. The Court concludes that Rule 16b–3(d)(1) exempts TRS's acquisition of InfoSpace stock from Section 16(b) liability because TRS, an insider, acquired InfoSpace stock directly from the issuer with the approval of the issuer's board of directors.

## CONCLUSION

The Court GRANTS Defendant American Express Travel Related Services Company's motion to dismiss the amended complaint, docket no. 13.

IT IS SO ORDERED.